UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

– against –

ABDUL RASHEED YAHAYA,

Defendant.

**Statement of Reasons Pursuant to 18 U.S.C. § 3553(c)(2)**

18-CR-121

**Parties:**

For United States

For Defendant

**Appearances:**

Alexander Mindlin
Assistant United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201-1820
718-254-6433

Amanda David and Michelle Gelernt
Federal Defenders of New York, Inc.
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201
718-330-1208

**JACK B. WEINSTEIN, Senior United States District Judge:**

## Table of Contents

I.   Introduction ........................................................................................................... 1

II.  Instant Offense ....................................................................................................... 2

III. Guilty Plea ............................................................................................................. 2

IV.  Sentencing Hearing ............................................................................................... 2

V.   Offense Level, Criminal History Category, and Guidelines Range ...................... 3

    A.   Offense Level ..................................................................................................... 3

    B.   Criminal History Category ................................................................................. 4

    C.   Guidelines Range ............................................................................................... 4

VI.  Law ........................................................................................................................ 5

VII. 18 U.S.C. § 3553(a) Considerations ..................................................................... 5

VIII. Sentence ............................................................................................................... 7

IX.  Conclusion ............................................................................................................. 7

## I.   Introduction

Defendant Abdul Rasheed Yahaya ("Yahaya" or "Defendant") is a Nigerian national who immigrated to the United States seeking a better life for himself and his now eight-year-old son. He settled in Riverdale, Georgia; his integration into the local community was seamless. While working at several odd jobs, he entered into a partnership to operate a car retail business. This led to his involvement in the wire fraud scheme charged in this case. He pled guilty to the offense, his first and only criminal conviction. Yahaya was sentenced to time-served—an incarceratory term of three days—to be followed by three years' supervised release. Execution of the orally imposed sentence was stayed for three days to permit the department of Immigration and Customs Enforcement ("ICE") to take custody of Yahaya for immediate deportation.

## II. Instant Offense

Yahaya participated in a scheme to defraud multiple victims through business email compromise and confidence fraud. Government's Sentencing Memorandum ("Gov. Sent. Mem.") at 1, ECF No. 77. The fraud involved sending emails and other online communications to strangers, feigning a shared business or personal relationship in order to extract money from them. The money stolen from the victims in this case, more than $1.5 million, was deposited in several bank accounts. Yahaya was listed as the owner of record of at least five such accounts. PSR ¶¶ 5-28. The scheme was discovered in October 2017, following an investigation commenced by agents with the Federal Bureau of Investigation ("FBI"). PSR ¶¶ 7-28. Yahaya self-surrendered to the investigating agents on April 4, 2018 and was charged with conspiracy to commit wire and bank fraud, in violation of 18 U.S.C. Section 1349. *Id.*

## III. Guilty Plea

On December 21, 2018, Defendant pled guilty, pursuant to a plea agreement, to Count 1 of a two-count superseding indictment. Charged was that Yahaya conspired to commit wire and bank fraud, in violation of 18 U.S.C. Section 1349. PSR ¶ 1.

## IV. Sentencing Hearing

Yahaya travelled 10 hours by bus from Riverdale, Georgia for his sentencing, which commenced on October 31, 2019. The proceedings were videotaped to develop a record of Yahaya's pattern of speech, facial expressions, and body language, as well as the courtroom atmosphere. *See* 18 U.S.C. § 3553(a); *In re Sentencing*, 219 F.R.D. 262, 265 (E.D.N.Y. 2004) ("*De novo* appellate review of a district court's departure from the Sentencing Guidelines is deficient without a video record of the sentencing proceedings. All sentencing hearings conducted by the undersigned shall be recorded by a video device. The video record . . . shall

2

chronicle the defendant's observable demeanor during the hearing and capture, as much as it is possible to do so, the real world humanity that the district court judge confronts.").

The court observed that Yahaya was seemingly distraught over his bad conduct. He did not address the court at the hearing because of what his attorney described as a deep-seated fear of public speaking. Recognizing this limitation, Yahaya's attorney prepared in advance a 12-minute video ("Defendant's Sentencing Video") in support of a non-Guidelines sentence. The government had not reviewed the video, so the hearing was adjourned for the government to do so.

At the end of the first day of the hearing, the court ordered bail revoked. Yahaya was remanded to the custody of the United States Marshal. It marked the first time he was incarcerated in connection with the instant offense. When the hearing reconvened on Monday, November 4, 2019, Defendant's Sentencing Video was shown. The video captured Yahaya's reflections on his upbringing, his immigration from Nigeria, the new life he has built in Georgia, and the circumstances surrounding his involvement in this case. Others appeared on the video to endorse his character. A consistent theme among them was that the crime Yahaya committed does not reflect the hardworking, generous man they know him to be.

## V.  Offense Level, Criminal History Category, and Guidelines Range

### A. Offense Level

The base offense level is 7. The government argued that several enhancements applied. The court found the following adjustments proper, yielding an adjusted offense level of 24:

     i. 16-level increase since the offense involved losses in excess of $1.5 million, pursuant to USSG 2B1.1(b)(1)(I);

    ii. 2-level increase since the offense involved ten or more victims, pursuant to USSG 2B1.1(b)(2)(A)(i);

iii. 2-level increase because a substantial part of the crime was committed outside of the United States, pursuant to USSG 2B1.1(b)(10)(B); and a

iv. 3-level decrease since Defendant accepted responsibility and timely entered a guilty plea, pursuant to USSG 3E1.1(a) and (b).

Defendant sought a 4-level decrease, pursuant to U.S.S.G. Section 3B1.2(a), on the theory that he played a minimal role in the offense. Specifically, he contended that (1) he did not participate in planning the offense, and (2) was only compensated $2,000 for his involvement—a drop in the bucket when compared to the $1.5 million that allegedly changed hands in the crime.

While Yahaya was not an architect of the scheme and was paid $2000 for his involvement, the thousands of dollars in stolen funds he transferred to bank accounts facilitated the continuation of the scheme. His role in the scheme may be usefully analogized to that of a getaway driver in a bank robbery. It can both be true that he took no part in planning the crime and was paid little for his role, *and* that his participation was important to the execution of the crime. The court concluded that Defendant's role was at best minor, yielding only a 2-level decrease.

In sum, the total adjusted offense level is 22, calculated as follows: 7 (base offense level) + 16 ($1.5 million loss adjustment) + 2 (10 or more victims adjustment) + 2 (crime committed outside the United States adjustment) − 3 (timely notifying the government of guilty plea adjustment) − 2 (minor role adjustment).

## B. Criminal History Category

Since Defendant has no prior criminal convictions, his criminal history score is zero and criminal history category is I. PSR ¶ 48-49.

## C. Guidelines Range

The Guidelines imprisonment range is 51 to 63 months. PSR ¶ 80.

## VI.    Law

The United States Sentencing Guidelines ("Guidelines") are advisory. *United States v. Booker*, 543 U.S. 220, 245 (2005). The district court shall not, however, "presume that a Guidelines sentence is reasonable." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). Rather, the district court "must . . . conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense." *Id.* If the support for doing so is compelling, the district court may impose a sentence outside the Guidelines range. *Id.* The sentencing court shall "state in open court the reasons for its imposition of the particular sentence" and, if the court has departed from the Guidelines, shall state why. 18 U.S.C. § 3553(c).

## VII.    18 U.S.C. § 3553(a) Considerations

Yahaya, 39, was born in Ilorin, Nigeria. As a child, his family lived a transient lifestyle, relocating often because his father was serving in the military. Defendant's Sentencing Memorandum at 2 ("Def. Sent. Mem."), ECF No. 74. His family came from modest financial means. Yahaya attended boarding school for his primary and secondary school education. Def. Sent. Mem. at 2, ECF No. 74. Boarding school proved challenging for reasons Yahaya did not anticipate. When Yahaya was 12—in an act reflective of the larger pattern of bullying he endured at the hands of his classmates—an older student threw an unknown liquid on his eye while they were on the school playground. *Id.* The injury to his eye required surgery to remediate. *Id.* He was hospitalized for an extended period of time, missing a year of school. Def. Sent. Mem. at 3, ECF No. 74.

Time away did not completely heal his wounds. His eye was permanently damaged; his vision remains impaired to this day. *Id.* Despite these obstacles, Yahaya excelled at school and

was admitted to the Federal University of Technology in Nigeria. *Id.* At university, Yahaya was targeted for initiation by violent, cult-like criminal groups. On multiple occasions, Yahaya was blindfolded, kidnapped and stabbed by members of these groups. The unrelenting abuse did not deter him from earning his degree. He graduated from the university in 2003 with a bachelor's degree in mathematics. Def. Sent. Mem. at 4, ECF No. 74; PSR ¶ 67.

After completing his studies, Yahaya became romantically involved with the mother of his child. Their relationship deteriorated shortly before the birth of their son. *Id.* The mother would soon become absent from their son's life. *Id.* Yahaya, on the other hand, was inspired by fatherhood to live life with a greater sense of purpose. A purpose, Yahaya recalled, that transcended himself and centered around providing his son better opportunities than those afforded to him during his upbringing in Nigeria. Mindful of the limitations for upward mobility in Nigeria, Yahaya immigrated to the United States to live out those ambitions. Def. Sent. Mem. at 1, ECF No. 74.

Yahaya settled in Riverdale, Georgia and found a second home in the local Nigerian community there. Def. Sent. Mem. at 5, ECF No. 74. He quickly established a reputation as a hard worker, working at various jobs, including as a delivery man at a Chinese restaurant. *Id.* While employed at the restaurant, Yahaya developed a close bond with the restaurant owner and took to the owner's three children as his own. *Id.* After taking care of his basic necessities, Yahaya sent to his family in Nigeria what was left of his earnings; it was not much. *Id.*

In 2013, to supplement his income, Yahaya entered into a partnership with his co-defendant Joshua Philips to operate what he believed was a legitimate car retail business. Def. Sent. Mem. at 6, ECF No. 74. Yahaya claims his role was limited to maintaining a bank account for the business. Def. Sent. Mem. at 8; PSR ¶¶ 1-28. *Id.* Given their shared Nigerian heritage,

and perhaps blinded by his unrelenting desire for financial security and to provide the same for his family, Yahaya thought Philips was trustworthy. He did not inquire about Philips' motivations for wanting to partner with him for their so-called car retail business. Had he done so, Yahaya likely would have discovered that the business was a cover for criminal activity and been in a position to mitigate it, given his advanced education. He simply took his share of the proceeds that were promised for his participation in the scheme—$ 2,000.

## VIII.    Sentence

Yahaya was sentenced to time-served—an incarceratory term of three days—plus three years' supervised release. A first-time offender, Yahaya has lived an otherwise commendable life. Before and since his conviction, he worked at a variety of low-skilled jobs to provide for his family. Those who know him speak admiringly of his character and selflessness. He understands the seriousness of his conduct and has expressed genuine remorse.

The collateral consequences of his conviction—most prominently, his impending deportation to Nigeria—make the sentence appropriate. His goal of bringing up his only child in the United States to seize the promise of the American Dream is forever extinguished. If he returns to the United States after deportation, he will undoubtedly be reincarcerated. Additional incarceration at this juncture would be of little deterrent value to anyone.

A $100 special assessment is imposed. No fine is imposed because of Defendant's inability to pay one. A $2,000 agreed upon forfeiture—to be paid within 30 days—is required. The government may seek restitution within 90 days of his sentencing in court.

## IX.    Conclusion

Respectful consideration was given to the Guidelines. The sentence is "sufficient, but not greater than necessary" to comply with the purposes of sentencing. 18 U.S.C. § 3553(a).

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: December 9, 2019
          Brooklyn, New York